UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COURTLAND MINOR,

        Plaintiff,

Case No. 1:11-cv-1032

Hon. Robert J. Jonker

v.

J. BUNTING, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a *pro se* civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983.  This matter is now before the court on defendant Dr. Czop's motion to dismiss or for summary judgment (docket no. 12) and defendant Deeren, Gardner, Jastifer, LeBarre and Bunting's motion to dismiss or for summary judgment (docket no. 13).

    **I.**    **Background**

Plaintiff's complaint named six defendants: RN Joann Bunting; RN Christy Jastifer; Housing unit manager (HUM) Jody LeBarre; RN Bryan Deeren; Dr. Richard Czop; and Corrections Officer (CO) Jack Gardner.  Compl. (docket no. 1).  Plaintiff set forth the following allegations. Plaintiff broke his left arm while exercising.  *Id.*  Plaintiff does not identify the date of the injury, but seeks damages commencing on September 22, 2009.  *Id.*[1]  After he suffered the injury, plaintiff requested the "officers named in [the] complaint" (i.e., HUM LaBarre and CO Gardner), take him to the health care facility for treatment.  *Id.*  The officers laughed at plaintiff, told him to return to

---

[1] The court notes that plaintiff's grievance stated that the injury occurred on September 13, 2009. *See* discussion, *infra*.

his cell and refused to send him medical assistance. *Id.* After a shift change, the officers on duty requested a doctor and nurse to examine plaintiff. *Id.* Upon examination, they concluded that plaintiff had torn a muscle rather than a broken arm, and wrapped his arm in a bandage and sent him back to his cell. *Id.* Plaintiff sent complaints to the prison's medical department and was eventually seen by a local doctor who determined that plaintiff needed surgery. *Id.* However, surgery was not possible at that time because plaintiff's arm had started to heal. *Id.* Plaintiff finally received the surgery on October 5, 2009. *Id.* Plaintiff seeks over $3,000,000.00 in damages for deliberate indifference to his serious medical needs and his pain and suffering from September 22, 2009 through October 5, 2009. *Id.*

      **II.**      **Defendants' motion for summary judgment**

          **A.**      **Legal Standard**

Defendants have moved for summary judgment because plaintiff failed to exhaust administrative remedies.[2] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

---

[2] The court notes that defendants filed motions seeking alternative relief, i.e., dismissal under Fed. Rules Civ. Proc. 12 and summary judgment under Fed. Rules Civ. Proc. 56. Because all of the parties have supplemented the record with affidavits and other materials outside of the pleadings, the court will treat these motions as seeking summary judgment under Fed. Rules Civ. Proc. 56.

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Failure to exhaust

#### 1. Exhaustion requirement

The PLRA, 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S.

at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2.     The grievance process

The Michigan Department of Corrections (MDOC) requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grieveable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues shall be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Plaintiff failed to properly exhaust his grievance

Defendants seek summary judgment because plaintiff failed to properly exhaust a grievance through Step III. Dr. Czop has supplied an affidavit from Richard D. Russell, Manager of the Grievance Section at the MDOC. Russell Aff. (docket no. 12-2). In his affidavit, Russell states that a search of the MDOC database reflects that from January 1, 2009 through December 12, 2011, plaintiff filed one grievance through Step III, identified as no. ICF-09-10-2481-12d1 ("2481"). *Id.* at ¶ 18; MDOC Prisoner Step III Grievance Report (Grievance Report) (docket no. 12-2 at p 16).[3] The five defendants represented by the Michigan Attorney General (MDOC employees Deeren, Gardner, Jastifer, LeBarre and Bunting) rely on the Grievance Report to support the lack of exhaustion assertion. *See* Grievance Report (docket no. 14-2). Plaintiff does not dispute that Grievance 2481 is the operative grievance in this lawsuit.

Plaintiff filed Grievance 2481 on September 30, 2009. In this grievance, plaintiff stated that he broke his left arm while exercising on September 13, 2009 and that he received inadequate medical treatment. *See* Grievance 2481 (docket no. 14-3). The Step I response

---

[3] The court notes that the Grievance Report is dated from "May 2009 to Present [December 12, 2011]." *See* docket no. 12-2 at p. 16.

contained a lengthy review of plaintiff's documented medical treatment as follows. Plaintiff was seen by Nurse Bunting around noon on September 13, 2009, while Bunting was distributing medication. *Id.* Plaintiff told Bunting that he hurt his left arm while doing pushups. *Id.* Bunting examined plaintiff's arm at his cell, and although she found no deficits or obvious deformities in the arm, scheduled plaintiff for an examination. *Id.* Plaintiff complained after the shift change and was evaluated by nursing staff at 1440 hours. *Id.* The Step I grievance response notes plaintiff's treatment history: plaintiff was supposed to be scheduled as an add-on for medical examination on September 14th, but this apparently did not occur due to a facility lockdown; plaintiff was evaluated by a nurse on September 22nd; plaintiff was given an x-ray on or about September 24th which revealed a fracture of his proximal humerus, but plaintiff did not request pain medication at that time; because no orthopedic specialists were available, plaintiff was sent to the emergency room at Sparrow Hospital; the hospital documentation reflected that plaintiff had a cyst on his bone which predisposed him to an "unlikely fracture". *Id.* Surgery to re-set plaintiff's arm was scheduled for September 29th in Lansing, but was cancelled and an attempt was made to schedule it at a preferred facility in Jackson. *Id.* Ultimately, the surgery was rescheduled in Lansing, where it was completed on October 5th. *Id.*

        Plaintiff's grievance regarding inadequate medical care was denied for the following reasons: bone cysts are very rare and staff would not have suspected a fracture to result from an arm's length fall to the ground; the initial nursing action was appropriate; a scheduling mixup occurred due to the mishandling of an "add-on" list and a facility lockdown; and, once the fracture was discovered a further delay occurred due to the approval process for a surgical date. *Id.* The

6

grievance respondent acknowledged that the accumulated circumstances caused plaintiff distress, but denied plaintiff's grievance that medical staff failed to treat his broken arm. *Id.*

Plaintiff filed a Step II appeal on November 19, 2009, stating that the problem was not resolved. *Id.* The Step II response was dated December 4, 2009 and returned to plaintiff on December 8, 2009. *Id.* However, a copy of the Step II response is not in the court file. Plaintiff filed a Step III appeal which was rejected as untimely. *Id.* The Step III response dated March 16, 2010, stated in pertinent part:

> The grievant's Step III appeal was to be received by December 23, 2009, however it was not received until March 9, 2010. The grievance does not provide support for this delay.

*Id.*

Based on this record, defendants have established that plaintiff did not properly exhaust his grievance due to filing an untimely Step III response. In his response to defendants' motions for summary judgment, plaintiff filed a brief stating that he mailed the Step III appeal using interdepartmental mail on December 15, 2009; that it should have reached the appropriate office by January 19, 2010; that the appeal was returned to plaintiff and then sent back to the MDOC offices in Lansing on February 4 and March 9, 2010. Plaintiff's Opposition at p. 2 (docket no. 15). However, plaintiff has failed to provide an affidavit or declaration to establish that he mailed the Step III appeal on December 15th, or to explain why the appeal was returned to him on two occasions. In this regard, the court notes that plaintiff's Step III appeal contains three date stamps from the MDOC's Office of Grievance and Appeals, indicating that the grievance was received: on January 19, 2010; February 4, 2010; and March 9, 2010. *See* Step III Appeal (docket no. 14-3 at p. 3).

7

In an apparent sur-reply, plaintiff filed an "affidavit" on February 29, 2012, which stated in pertinent part that:

> On December 15, 2009, I deposited my step III appeal to Lansing via Interdepartmental Mail in the prison mail box clearly indicating that it was I-D Mail. After taking those steps I have no other control over the process.

*See* Affidavit of Courtland Minor at ¶ 17 (docket no. 18). Overlooking the fact that plaintiff's affidavit was an untimely response to defendants' dispositive motion, his affidavit did not create a factual issue because it was not signed by a notary and did not contain a notary jurat vouching for the truthfulness of the signed record. *See* M.C.L. § 55.265(a) (defining a "jurat" as "a certification by a notary public that a signer, whose identity is personally known to the notary public or proven on the basis of satisfactory evidence, has made in the presence of the notary public a voluntary signature and taken an oath or affirmation vouching for the truthfulness of the signed record." The absence of a jurat or other evidence of verification requires a court to find that the document fails to constitute an affidavit. *Knobloch v. Langholz*, No. 231070, 2002 WL 1360388 at *2 (Mich. App. June 21, 2002) (unpublished). *See Kelley v. City of Flint*, 251 Mich. 691, 696; 232 N.W. 407 (1930) ("[a] purported affidavit, on which perjury could not be assigned if it was wilfully false, would not, in law, be an affidavit at all"); *People to Use of Esper v. Burns*, 161 Mich. 169, 173, 125 N.W. 740 (1910) ("[a]n affidavit has been defined to be a declaration on oath, in writing, sworn to by a party before and attested by some person who has authority to administer oaths"). Furthermore, plaintiff's affidavit did not include an unsworn declaration made under penalty of perjury as authorized by 28 U.S.C. § 1746.

Viewing the facts in the light most favorable to the non-movant, the record reflects that plaintiff did not properly exhaust his grievance because he submitted an untimely Step III appeal

...

which the MDOC rejected. Neither party has offered an explanation for why the Step III appeal was received by the MDOC on three different occasions. However, such an explanation is not necessary to resolve the exhaustion issue, since even the earliest date the Step III was received, January 19, 2010, would have been untimely. Under these circumstances, plaintiff did not properly exhaust his grievance in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Accordingly, defendants are entitled to summary judgment for lack of proper exhaustion.

### III. Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motions for summary judgment (docket nos. 12 and 15) be **GRANTED** and that this case be dismissed.

Dated: August 2, 2012 /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).